# Exhibit A to
# Provisional Response to Petition

**IN THE UNITED STATED DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Petitioner,<br><br>v.<br><br>YAIRANISSE RIVERA-LOPEZ,<br><br>Respondent. | )<br>)<br>)<br>)<br>) Civil Case No. 25-mc-00013 (MAJ-GLS)<br>)<br>)<br>)<br>) |

**DECLARATION OF MICHELLE SCHWERIN IN SUPPORT OF RESPONDENT'S ANSWER**

I, Michelle Schwerin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am one of the attorneys who represented Ms. Rivera during the summons interview related to the above-captioned matter.
2. Puerto Rico Act 20 and 22 (subsequently and collectively, Act 60) were enacted in 2012 and intended to encourage U.S.-based investment in Puerto Rico economic development.
3. Over the past five years, the Government has publicly announced it believes certain transactions relating to Puerto Rico tax incentives are abusive transactions. It has further announced that addressing these allegedly abusive transactions is a civil and criminal enforcement priority. Upon information and belief, the Internal Revenue Service ("IRS") and Department of Justice ("DOJ") are investigating and asserting civil and criminal charges against taxpayers, promoters, attorneys and accountants involved with these transactions. *See, e.g.,* Exhibit 1.

4. Based on my experience as a tax practitioner and my understanding of the IRS's practices, as memorialized in the Internal Revenue Manual, the IRS and DOJ take enforcement action against transactions they view as abusive. *See, e.g.,* Internal Revenue Manual ("I.R.M.") 4.32.2.2 (06-04-2018) ("IRS combats [] promotions by the following: . . . Asserting civil penalties against promoters and return preparers . . . [and] Criminally prosecuting promoters, preparers, or clients"); I.R.M. 4.32.2(5) (02-03-2025) ("Successful resolution of promoter investigations and client examinations require the combined actions of Collection, Counsel, Criminal Investigation (CI), LB&I, SB/SE, TE/GE, W&I, and the Tax Division of the Department of Justice (DOJ)").

5. Ms. Rivera was formerly employed by TLS Management and Marketing Services, LLC ("Tax Law Solutions" or "TLS"), a company that provided tax planning services.

6. Ms. Rivera received a summons for testimony relating to an investigation the IRS was conducting "In the matter of Liability of David Runge under 26 USC Secs. 6694, 6695, 6700, 6701, 6707, and 6708".

7. Upon information and belief, David Runge was an owner of TLS and involved with TLS during the time Ms. Rivera was employed there.

8. The Summons was signed by Revenue Agent Jean Lane.

9. On July 11, 2024, Ms. Rivera appeared at the Offices of the Internal Revenue Service in Guaynabo, Puerto Rico for a summons interview. I, along with my partner, Sanford Boxerman, appeared via videoconference by Zoom to participate in that interview.

10. During the interview, Ms. Rivera listened to each question presented to her, considered the questions and decided whether to provide a substantive response or assert a privilege and decline to answer.

11. During the interview, Ms. Rivera provided substantive responses to approximately[1] 19 questions, asserted her Fifth Amendment rights and declined to answer approximately 67 questions, specifically asserted her Fifth Amendment rights and concerns about compliance with a Non-Disclosure Agreement as to two questions, and declined to answer one question on separate grounds.

12. Later in July 2024, Sanford Boxerman and I spoke with Revenue Agent Lane concerning Ms. Rivera's invocation of his Fifth Amendment rights not to answer certain questions.

13. In that conversation, Sanford Boxerman and I offered that Ms. Rivera would cooperate with the government in seeking an immunity order under 18 U.S.C. § 6004. The IRS declined that offer. *See* Exhibit 2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 17, 2025 at St. Louis, Missouri.

[1] These numbers are the declarant's best approximation based on an analysis of detailed notes taken during the interview. To the declarant's understanding, the interview was not a tape-recorded and no stenographer or court reporter was present.

### 4.32.2.1.7 (02-03-2025) Related Resources

1. The following are the primary sources of guidance for the AT program:

- IRM 4.32.1, *Process Guide for Combating Abusive Tax Avoidance Transactions*
- IRM 4.32.3, *Coordination and Roles of Cross-Functional Units*
- IRM 4.50.5, *Office of Tax Shelter Analysis (OTSA)*
- IRM 5.20, *Abusive Tax Avoidance Transactions (ATAT)*
- IRM 20.1.6, *Preparer and Promoter Penalties*
- IRM 20.1.13, *Material Advisor and Reportable Transaction Penalties*

### 4.32.2.2 (06-04-2018) Overview Of Abusive Transactions (AT) Program

1. The IRS is committed to pursuing investigations of AT promoters to stop the widespread use of abusive promotions that erode the voluntary tax compliance system and result in substantial tax revenue loss. These investigations are designated as priority work. The IRS combats AT promotions by the following:

- Seeking timely civil injunctions.
- Asserting civil penalties against promoters and return preparers.
- Providing published guidance on various promotions.
- Conducting client examinations.
- Criminally prosecuting promoters, preparers, or clients.

EXHIBIT 1 tabbies

2. The term "promoter" as used throughout this IRM chapter unless specifically noted, includes promoters, material advisors as defined under IRC 6111, and tax return preparers.

3. The term "client" as used in this IRM chapter includes all persons who participated in a promotion, purchased a product or service from a promoter, had an interest in a promotion, or received any material aid, assistance, or advice with respect to the promotion. Client includes investors and advisees. Client also includes all persons who paid to have a tax return or tax form prepared or sought tax advice from any individual or firm offering such service or services.

### 4.32.2.3 (02-03-2025) Abusive Transactions Defined

1. Abusive transactions include the organization or sale of any plan or arrangement promoting false or fraudulent tax statements or gross valuation misstatements, aiding or assisting in the preparation or presentation of a return or other document to obtain tax benefits not allowed by law, and actions to impede the proper administration of the Internal Revenue Code (IRC). This general definition includes both tax shelters as defined in various sections of the IRC and other types of abusive tax promotions.

2. IRC 6662(d)(2)(C)(ii) broadly defines a "tax shelter" as a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of federal income tax.

3. Abusive Transactions (AT) promotions include, but are not limited to, programs that rely on the following:

A. False statements about the allowance of tax benefits to clients that are contrary to clearly established law.

B. Intentional manipulation or misapplication of IRC sections to improperly claim tax benefits.

C. Sham arrangements having no economic significance or business purpose other than the avoidance or evasion of tax.

D. Noncompliance with disclosure requirements of IRC 6111, *Disclosure of Reportable Transactions.*

E. Noncompliance by material advisors with the list maintenance requirements of IRC 6112, *Material Advisors of Reportable Transactions Must Keep Lists of Advisees Etc.*

F. Attempts to impede the proper administration of tax laws.

G. Gross overstatement of withholding or refundable credits to obtain false refunds.

4. There are many tools available to the IRS to address the promotion of and the participation in an AT activity, including:

A. Seek injunctive relief under IRC 7402, *Jurisdiction of District Courts*; IRC 7407, *Action to Enjoin Tax Return Preparers*; and/or IRC 7408, *Actions to Enjoin Specified Conduct Related to Tax Shelters and Reportable Transactions.*

B. Assessment of civil penalties against promoters under IRC 6700, *Promoting Abusive Tax Shelters, Etc.*; IRC 6701, *Penalties for Aiding and Abetting Understatement of Tax Liability;*IRC 6707, *Failure to Furnish Information Regarding*

*Reportable Transactions*; IRC 6708, *Failure to Maintain Lists of Advisees with Respect to Reportable Transactions;*IRC 6694, *Understatement of Taxpayer's Liability by Tax Return Preparer;*IRC 6695, *Other Assessable Penalties with Respect to the Preparation of Tax Returns for Other Persons*.

C. Criminal prosecution of individuals who organize; promote; sell; or assist in the organization, promotion, or sale of an AT activity; and, potentially, clients in the activity.

D. Examinations of individuals involved in promotions (i.e., promoters, preparers, clients, etc.).

E. Assessment of civil penalties against clients including IRC 6707A, *Penalty for Failure to Include Reportable Transaction Information With Return*, and IRC 6662A, *Imposition of Accuracy-Related Penalty on Understatements with Respect to Reportable Transactions*.

F. Office of Professional Responsibility sanctions for those clients, promoters, or preparers who are practitioners defined in § 10.3 of Circular 230, *Regulations Governing Practice Before the Internal Revenue Service*, or otherwise subject to Circular 230.

G. Revocation of electronic filing privileges.

5. Successful resolution of promoter investigations and client examinations require the combined actions of Collection, Counsel, Criminal Investigation (CI), LB&I, SB/SE, TE/GE, W&I, and the Tax Division of the Department of Justice (DOJ). See IRM 4.32.3, *Coordination and Roles of Cross Functional Units*, for additional information.



**PRESS RELEASE**

# Puerto Rico CPA Indicted And Arrested On Wire Fraud Charges In Relation To Act 20 And Act 22 Scheme

Wednesday, October 21, 2020

**For Immediate Release**

U.S. Attorney's Office, District of Puerto Rico

SAN JUAN, PUERTO RICO – On October 14, 2020, a Federal Grand Jury in the District of Puerto Rico returned an indictment charging Gabriel F. Hernández, with ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343.  W. Stephen Muldrow, United States Attorney, District of Puerto Rico and Tyler R. Hatcher, Special Agent in Charge, Internal Revenue Service, Criminal Investigation (IRS-CI), Miami Field Office, made the announcement. The indictment was unsealed today after the arrest of the defendant by federal law enforcement officers from IRS-CI.

"As I have said in the past, persons who are involved in committing fraud are encouraged to come forward to authorities – that includes individuals that are fraudulently using Puerto Rico's tax laws to evade federal taxes," said U.S. Attorney Muldrow. "This case should also serve as a warning to anyone considering seeking to evade taxes by illegally exploiting federal and Puerto Rico tax laws."

"Federal and Puerto Rican tax laws have been put in place to invigorate the economy and provide financial relief to Puerto Rico.  IRS Criminal Investigation will vigorously pursue any individuals and professionals that fraudulently enrich themselves by abusing government tax incentive programs," said Tyler R. Hatcher, Special Agent in Charge of the IRS-CI Miami Field Office.

According to allegations in the indictment, Hernández, a CPA who served as Tax Manager and Partner-in-Charge of the Tax Division of a large public accounting, tax, consulting and business advisory firm, devised a scheme to defraud the Internal Revenue Service of the United States Department of the Treasury. The scheme involved the submission of false information to the government of Puerto Rico in an attempt to fraudulently provide Company A with federal tax relief via the provisions of Act 20.

Act 20, also known as the Export Services Act, offers tax incentives for Puerto Rican companies to export services to other jurisdictions. The tax benefits on income derived from customers outside Puerto Rico in relation to services rendered from Puerto Rico included a fixed income tax rate of 4% for eligible export services, a 100% tax-exemption on dividends from earning and profits, and a 60% tax-exemption on local municipal taxes.

In December 2018, Hernández formed Company A under Puerto Rico law for an undercover special agent of the IRS-CI posing as a wealthy United States taxpayer from Arizona. In December 2019, Hernández caused to be prepared and filed a fraudulent tax-exemption application with the Office of Industrial Development and fraudulently obtained Act 20 tax exemption status for Company A.

In December 2019, Hernández also determined that Company A would report $500,000 in business earned income in Puerto Rico, which would reduce Company A's federal taxes. Then in July 2020, Hernández caused a Puerto Rico corporate tax return for Company to be prepared and filed with the Puerto Rico Department of Treasury (Hacienda), falsely claiming that $500,000 was earned in Puerto Rico by Company A.

Hernández also caused the preparation and filing of false 2020-2021 Business Volume Declarations with the Municipality of San Juan based on the false earnings. The defendant unjustly enriched himself and others by receiving fees in exchange for these false and fraudulent acts.

The indictment further alleges that, as part of the scheme, the defendant defrauded the IRS, and unlawfully evaded the assessment and payment of taxes, by engaging in financial transactions devoid of any economic substance (sham transactions). The transactions were intended to create the illusion of a consulting business earning income from services performed within Puerto Rico, rather than within the mainland United States. The defendant and others communicated by e-mail and telephone with undercover special agents of the IRS-CI in interstate and foreign commerce as part of the scheme. The defendant and others misrepresented, concealed, and hid, acts done in furtherance of the scheme.

If found guilty, the defendant faces a maximum statutory sentence of up to 20 years in prison and a fine up to $250,000 for charges relating to wire fraud. An indictment is a charging document containing allegations. All defendants are presumed innocent until proven guilty beyond a reasonable doubt in a court of law.

U.S. Attorney W. Stephen Muldrow commends the investigative efforts of IRS-CI's Miami Field Office. This case is being prosecuted by Assistant U.S. Attorney Seth A. Erbe and Department of Justice Assistant Chief Gregory E. Tortella and Special Attorney Francesca L. Bartolomey.

###

*Updated October 21, 2020*

**Topics**

IRS **Large Business & International**

**Training**

June 7, 2021

# Introduction to Puerto Rico for Acts 20/22

*Presented by:*

ACCI Branch 7

 # Front Matter Items

- The IRS Mission Statement
- 14 General Principles of Ethical Conduct for Federal Employees
- Your Rights as a Taxpayer

 # Course Objectives

- At the end of this course, you will be able to:
  - Explain the requirements and benefits of Puerto Rico Act 20
  - Explain the requirements and benefits of Puerto Rico Act 22



# Acronyms

- CFC: Controlled Foreign Corporation
- GILTI: Global Intangible Low-Taxed Income
- BFR: Bona fide Resident
- WEIIC: Withholding Exchange & International Compliance
- PR: Puerto Rico




# Background – U.S. Taxation of Puerto Rico Residents

- The US income tax treatment of Puerto Rican residents is unique
- US citizens pay tax on worldwide income, regardless of where they live.
- That is unless they are residents of Puerto Rico – A US citizen residing in PR is not subject to US income tax on Puerto Rican source income only
- Similarly, if a US citizen owns a CFC, it must pay tax on the CFC's subpart F income and GILTI income
- That is unless the US citizen resides in PR – in which case the owner is not subject to US tax on subpart F income and GILTI income on CFC's Puerto Rican source income only



# Puerto Rico Act 20 – The Export Services Act

- Applies to PR companies that provide services inside PR to customers based outside PR:
  - Company can qualify for 4% corporate tax rate on income from these services and No income tax on distributions
- Generally, seeks to attract U.S. high net worth business providers to become "bona fide residents" (BFRs) of PR and operate their business in PR:
  - U.S. citizens that become BFRs of PR can avoid U.S. GILTI and subpart F income inclusion rules with respect to business income
- Generally availed of by financial services (hedge fund managers) and consulting, but PR also is targeting U.S.-based advertising firms, computer development firms, and call centers

 # Puerto Rico Act 20 - Example

## Example

- **Example**: U.S. citizen hedge fund manager that operates a financial or consulting services business through a corporate entity (foreign or domestic) and draws a salary. Services are provided by phone/internet to customers around world. Citizen physically moves and relocates business to Puerto Rico and becomes BFR

| | US based | PR bona fide resident |
|---|---|---|
| Business income rate | 21% rate if domestic corporation<br><br>21% (subpart F income) or up to 13.125% (GILTI) if a CFC | 4% (to PR; 0% to US) |
| Dividend income rate | 23.8% | 0% |
| Tax on employment income | 37% top rate | 33% top rate (to PR; 0% to US) |



# Puerto Rico Act 22 – Individual Investors Act

- PR: Full tax exemption for BFRs on certain financial income, including interest, dividends, and capital gains, on Puerto Rican related income
- Benefits generally limited to buying Puerto Rican real estate and investing in Puerto Rican businesses
- Gain on U.S. individual's stock/bonds/other investment assets generally also can benefit
- Gain attributable to pre-move period, subject to either 5 or 15% tax
- Targets high net worth U.S. individuals willing to become BFRs



# Puerto Rico Act 22 – Individual Investors Act (cont'd)

- U.S.: Puerto Rican related income of BFRs generally also exempt from U.S. income tax
- Income from US sources or other non-Puerto Rican sources is NOT exempt from U.S. tax. Therefore, income (e.g., dividends/interest) from U.S. portfolio securities or U.S. real estate not eligible for benefits
- Capital gain from sale of stocks/bonds/other investment assets held before moving to PR eligible for U.S. tax exemption after 10 years
- Alternatively, can elect to mark-to-market on date of move, or to prorate portion of gain pre-BFR status

 # Puerto Rico Act 22 - Example

## Example

❑ **Typical example**: Silicon Valley startup founder owns highly appreciated stock in US-based business. Moves to PR.

| | US resident | PR bona fide resident |
|---|---|---|
| Dividends | 23.8% | 20% |
| Capital gains | 23.8% | • 5% on pre-move gain (0% on remaining gain) if wait 10 years<br>• Alternatively, 23.8% on pre-move gain, and 0% on remaining gain<br>• If securities acquired after move to PR, full exemption on gain |

- Same benefits are not possible moving to non-territories (e.g., Switzerland) due to U.S. expatriation/exit tax rules, and would require giving up US passport

 # Summary of Non-Compliance

- Some taxpayers are taking advantage of tax incentives offered under Puerto Rico Act 22 by:
  - Erroneously claiming bona fide residency in Puerto Rico and excluding income subject to US tax on a filed US income tax return or failing to file and report income subject to US tax
  - Establishing bona fide residency in Puerto Rico but erroneously reporting US source income as Puerto Rico source and not filing US return to avoid US tax
  - Not complying with IRC Section 937, *Residence and Source Rules Involving Possessions,* including look-back rules
- IRS Report to Congress Pursuant to Pub. L. 116-93 Regarding Interaction of Certain Puerto Rico and U.S. Tax Laws

 

# How the Issue was Identified

- Highlighted in multiple media outlets
- Promoters actively soliciting clients and distributing promotional material
- IIC field team in Puerto Rico submitted campaign proposal




# Goals/Intended Compliance Outcomes

- ❖ Reduce non-compliance by individuals incorrectly using Act 22 to reduce or eliminate US tax
- ❖ For tax years 2012-2019, 2331 individuals were granted benefits

IRS
Goals/Intended Compliance Outcomes
Reduce non-compliance by individuals incorrectly using Act 22 to reduce or eliminate US tax
For tax years 2012-2019, 2,331 individuals were granted benefits

Act 22 Individuals
Act 22 Individuals Total
2500
2000
1500
1000
500
0
17
107
253
253
346
300
637
418
2,331
2012
2013
2014
2015
2016
2017
2018
2019
Act 22 Individuals by Year and Total
New
Total
5

13

 IRS

# Campaign: External Announcement

This campaign addresses taxpayers who have claimed benefits through Puerto Rico Act 22, "Act to Promote the Relocation of Individual Investors to Puerto Rico", without meeting the requirements of IRC Section 937, *Residence and Source Rules Involving Possessions*. As a result, these individuals may be excluding income subject to US tax on a filed US income tax return or failing to file and report income subject to US tax. This campaign will also address those individuals who have met the requirements of IRC Section 937 but may be erroneously reporting US source income as Puerto Rico source income in order to avoid US taxation. The objective of this campaign is to address noncompliance in this area through a variety of treatment streams including examinations, outreach and soft letters.



# Campaign: Internal Announcement

Puerto Rico Act 22, "Act to Promote the Relocation of Individual Investors to Puerto Rico", provides an exemption from Puerto Rican income tax for certain interest and dividends sourced in Puerto Rico and provides reduced income tax rates for individuals who newly establish residence in Puerto Rico.

Under IRC § 933, bona fide residents of Puerto Rico (as defined under IRC § 937) exclude Puerto Rico-source income from U.S. income tax. Such individuals are subject to US income tax and file an income tax return with the IRS only to the extent they have US or other non-Puerto Rico source income to report.

Some individuals who are benefitting from Act 22 may be improperly excluding income subject to US tax on a filed US income tax return or failing to file and report income subject to US tax. Some individuals may erroneously treat certain capital gains on property acquired while a US resident as Puerto Rico source income. This campaign will address noncompliance in this area through a variety of treatment streams including examinations, outreach and soft letters.

 

# Puerto Rico Act 60

- On July 1, 2019, the Governor of Puerto Rico signed into law Act 60-2019, also known as the Puerto Rico Tax Incentives Code, which consolidated dozens of tax decrees, incentives, subsidies and tax benefits in a single statute, effective January 1, 2020. Acts 20 and 22 were among the incentive provisions that were consolidated into Act 60-2019. Notwithstanding this consolidation, Acts 20 and 22 are still commonly referred to by their original designations.
- The benefits from Act 22 (Act to Promote the Relocation of Individual Investors to Puerto Rico) are in effect until December 31, 2035.



# Collaboration to Support Campaign

- Criminal Investigation
- Data Analytics
- WEIIC
  - Planning and Special Programs
  - Revenue Agents
  - Practice Network
  - Territory 4 - Soft Letters
- Counsel

IRS

# Course Summary

- You are now able to:
  - Explain the requirements and benefits of Puerto Rico Act 20
  - Explain the requirements and benefits of Puerto Rico Act 22



# Large Business & International active campaigns

The Campaigns listed below are currently active.

In conjunction with, or in addition to these Campaigns listed, the Large Business and International Division will address taxpayer noncompliance related to unreported income, undisclosed assets, or any other tax avoidance scheme.

### Allocation of success-based fees without Rev. Proc 2011-29

### Business aircraft campaign

### Captive services provider campaign

### Corporate alternative minimum tax (CAMT)

### Costs that facilitate an IRC 355 transaction

### Deferred legal fees

### Distribution in excess of partner's basis campaign

### Expatriation of individuals

### FATCA filing accuracy

### Financial service entities engaged in a U.S. trade or business campaign

**Related**

- Large Business and International Compliance Campaigns
- LB&I Not Currently Active Campaigns

⊕ **FIRPTA reporting compliance for NRAs**

⊕ **Foreign base company sales income: Manufacturing branch rules**

⊕ **Foreign earned income exclusion campaign**

⊕ **Forms 1042/1042-S compliance**

⊕ **Form 1120-F Chapter 3 and Chapter 4 withholding campaign**

⊕ **Form 1120-F Delinquent Returns campaign**

⊕ **Form 1120-F Interest Expense/Home Office Expense**

⊕ **Form 1120-F Non-Filer & Protective Return U.S. Business Activity campaign**

⊕ **High income non-filer**

⊕ **Individuals employed by foreign governments & international organizations**

⊕ **Individual Foreign Tax Credit Phase II**

⊕ **Inflated cost of goods sold**

⊕ **IRC Section 965 for individuals**

⊕ **IRC 199 - Claims Risk Review**

⊕ **IRC Section 807(d) - Computation of Life Insurance Reserves campaign**

### ⊕ IRC Section 807(d) - Re-Computation of Life Insurance Reserves campaign

### ⊕ IRC 965 - Treatment of Deferred Foreign Income Upon Transition to Participation Exemption System of Taxation

### ⊕ Loose filed Forms 5471

### ⊕ Micro-captive insurance campaign

### ⊕ Nonresident alien individual (NRA) tax credits

### ⊕ Nonresident alien rental income from U.S. real property

### ⊕ Nonresident alien Schedule A and other deductions

### ⊕ Nonresident alien tax treaty exemptions

### ⊕ Offshore private banking campaign

### ⊕ Offshore service providers

### ⊕ Partnership losses in excess of partner's basis campaign

### ⊖ Puerto Rico Act 22, Individual Investors Act

Practice Area: Withholding, Exchange & International Individual Compliance

Lead Executive: Orrin Byrd, Director, Withholding & International Individual Compliance

Campaign Point of Contact: Ursula Gee, Program Manager, Withholding, Exchange & International Individual Compliance

This campaign addresses taxpayers who have claimed benefits through Puerto Rico Act 22, "Act to Promote the Relocation of Individual Investors to Puerto Rico", without meeting the requirements of IRC Section 937, Residence and Source Rules Involving Possessions. As a result, these individuals may be excluding income

subject to US tax on a filed US income tax return or failing to file and report income subject to US tax. This campaign will also address those individuals who have met the requirements of IRC Section 937 but may be erroneously reporting US source income as Puerto Rico source income in order to avoid US taxation. The objective of this campaign is to address noncompliance in this area through a variety of treatment streams including examinations, outreach and soft letters.

**Research issues**

**Sale of partnership interest**

**SECA tax**

**Sports industry losses**

**Swiss bank program campaign**

**Syndicated conservation easement transactions**

**Taxable asset transactions - Matching buyers and sellers**

**U.S. territories - Erroneous refundable credits**

**U.S. territories self employment tax**

**Verification of Form 1042-S credit claimed on Form 1040NR**

**Virtual currency**

*Page Last Reviewed or Updated: 10-Dec-2024*

Bloomberg Law News 2025-02-16T13:23:41547099491-05:00

# IRS Preparing Criminal Cases Against Tax Cheats in Puerto Rico

By David Voreacos and Jim Wyss2023-07-12T05:00:00001-04:00

- Incentives have lured crypto traders, fund managers to island
- ‘The message is the noose is tightening,’ lawyer says of probe

US prosecutors and IRS agents are deploying undercover agents and closely examining records to build criminal and civil cases against wealthy individuals suspected of illegally taking advantage of tax breaks offered by Puerto Rico.

The cash-strapped island used eye-popping incentives to lure hedge fund managers, cryptocurrency traders and other Americans to the US territory over the last decade. But investigators are now focusing on whether people lied about how much time they spend on the island and the source of their income, according to people familiar with the matter.

US officials are also looking at the promoters, attorneys and accountants who marketed the tax program, one of the people familiar with the probes said. At least two criminal investigations, including one involving a US lawyer, could result in charges soon, said the people, who asked not to be identified because the probes aren't public.

Prosecutors are weighing conspiracy and wire fraud charges, according to a speaker at a New York conference last month who recounted a phone call with a federal prosecutor who had been to San Juan.

“He said, ‘Look, we're here, we are looking to make cases,’” said the speaker, attorney Carlos Ortiz. “‘We're here with IRS agents, we're working with officials from Puerto Rico.’”

“The message is the noose is tightening,” Ortiz said after recounting the conversation.

The controversial tax breaks are designed to bring wealthy Americans to a US territory fresh out of bankruptcy and where more than 40% of residents live in poverty after hurricanes ravaged the infrastructure and medical system.

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

## 5,000 Americans

Since 2012, more than 5,000 Americans have qualified for incentives that allow them to legally avoid paying federal income tax and no taxes at all on dividend, interest and capital gains income. Another 3,600 businesses avoid taxes on dividends from earnings and profits, and pay 4% tax on export services.

But lawyers familiar with the program said the residency requirements are rigorous and tempt people to cheat. To qualify, people must stay on the island at least 183 days a year. They also must show they have a "closer connection" to Puerto Rico than the US, and that the island is their "tax home."

Internal Revenue Service investigations may start with a taxpayer's Form 8898, which must be filled out to begin or end "bona fide residence" in Puerto Rico or other US territories such as Guam or American Samoa.

Questions include: How many days were you present in the territory and the U.S.? Where was your principal permanent home? Where was your automobile located? Where were you registered to vote? Where did you derive the majority of your income?

Any new cases would be the first since Gabriel F. Hernandez, an accountant at BDO Puerto Rico, was indicted on wire fraud charges in October 2020. Prosecutors accused him of offering to help an undercover IRS agent falsely claim he earned $500,000 on the island. Hernandez pleaded not guilty, and his case is pending. A lawyer for Hernandez couldn't be reached to comment.

The IRS said in a statement that it investigates potential criminal violations when warranted. The Justice Department declined to comment.

Residency investigations are not new to wealthy people with multiple homes. Tax authorities in New York City, New York state and California have long sought to determine where people should be paying taxes.

The potential savings in Puerto Rico have drawn hundreds of crypto investors like **Michael Terpin**, who came several years ago.

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Michael Terpin
Photographer: Xavier Garcia/Bloomberg

"I didn't want to pay capital gains tax to the IRS on my Bitcoin," Terpin said in May at a crypto conference in Miami. Puerto Rico is "the only place that you can go and not have to pay on your global tax without renouncing" US citizenship, he said.

In an interview, Terpin said: "I've been told that every single person is going to get audited, and that's fine. I keep incredibly precise notes. I get them run past both a tax lawyer and a CPA, and I've got two bookkeepers. So bring it on, I'm not afraid of an audit."

Puerto Rico attorneys like Giovanni Mendez said that sort of attention to detail may convince the IRS that someone deserves the tax breaks.

"In practical terms, they have to have feet on the ground," Mendez said. "They have to have a home available to them at all times. They can't just stay in hotels or lease out a home when they're here."

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

The IRS Large Business and International Division announced a campaign in January 2021 to identify those who "may be erroneously reporting US source income as Puerto Rico source income in order to avoid US taxation," according to the agency's website.

The program is also under attack from local residents who believe that wealthy Americans are driving up real estate prices and paying far less in taxes than native Puerto Ricans. Amid sporadic protests against the wave of low-tax "colonizers," local legislation is pending that would overhaul the incentives.

## 'Time of Crisis'

"It has been 10 years since the law was approved and we want to know what has it resulted in," said Marlyn Goyco-Garcia, the national organizing manager for the Center for Popular Democracy, which has been lobbying to have the incentives modified or eliminated. "Especially in this time of crisis where everyone is paying more for electricity, health, education."

Popular Democracy is pressing the IRS for information on the investigations and Goyco-Garcia said the agency offered to provide more details in August.

Terpin, however, says the tax breaks have lured world class money managers and entrepreneurs to the territory.

"For some reason, that's seen as a bad thing by some people," he said.

The program began with the Puerto Rican Export Services Act, or Act 20, and the Individual Investors Act, or Act 22. They were consolidated in 2020 through Act 60, which required exempt businesses to generate $3 million in revenue and employ at least one Puerto Rican resident. Individuals must buy a home on the island and donate at least $10,000 a year to charities.

Private equity investor Robb Rill formed the 20/22 Act Society to navigate the legal and tax questions for people considering the move. A spokesman for the society said the "information document requests" the IRS is making to taxpayers are "onerous in nature."

The case of Hernandez, the indicted accountant, "raised awareness of potential risks associated with

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

non-compliance and highlighted the importance of adhering to the legal requirements and maintaining accurate documentation," according to the 20/22 society spokesman.

That kind of information is critical during audits, said tax attorney Mark Leeds, who has represented 30 clients relocating to Puerto Rico over the past decade.

"If they're making $1 million or more, they should expect to be audited," Leeds said. "If an audit comes, they want to have their presence locked down with a diary. I tell them to buy something every day with a credit card. Of course, these days cell and GPS tracking can also be used to determine an individual's whereabouts."

To contact the reporters on this story:
**David Voreacos** in New York at dvoreacos@bloomberg.net;
Jim Wyss in San Juan at jwyss9@bloomberg.net

To contact the editors responsible for this story:
**Misyrlena Egkolfopoulou** at megkolfopoul@bloomberg.net

Anthony Aarons, Sam Hall

© 2023 Bloomberg L.P. All rights reserved. Used with permission.

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

FORBES > MONEY > TAXES

# IRS Likely To Increase Scrutiny On The Puerto Rico Act 22 Tax Break

**Tom Cullinan** Contributor ⓘ
*I am a tax controversy lawyer with prior IRS leadership experience.*

0

Jun 21, 2024, 09:30am EDT

Puerto Rico's legislature passed Act 22 in 2012, according to critics in Congress, "to attract wealthy foreigners and mainlanders to Puerto Rico by offering generous tax-related benefits."

"For instance," they add, "after earning Puerto Rican residency status, individuals pay zero taxes for all Puerto Rico-source income, dividends and interests, and capital gains."

According to the IRS, Puerto Rico's Department of Economic Development and Commerce (DDEC) granted Act 22 benefits to 2,331 individuals between 2012 and 2019. Information past 2019 does not appear to be publicly available. (Act 22 became part of Act 60 of 2019.)

In late 2021, the IRS announced an audit "campaign" regarding individuals claiming the benefit of Act 22. This move was part of a larger campaign program the IRS' Large Business & International Division launched in 2017 with the stated premise of "moving toward issue-based examinations" that "require a response in the form of one or multiple treatment streams to achieve compliance objectives." The IRS' focus on Act 22 is one of forty eight current campaigns addressing "taxpayer noncompliance related to unreported income, undisclosed assets, or any other tax avoidance scheme."

According to the IRS, the Act 22 campaign "addresses taxpayers who have claimed benefits through Puerto Rico Act 22, 'Act to Promote the Relocation of Individual Investors to Puerto Rico', without meeting the requirements of IRC Section 937, Residence and Source Rules Involving Possessions. As a result, these individuals may be excluding income subject to U.S. tax on a filed U.S. income tax return or failing to file and report income subject to U.S. tax. This campaign will also address those individuals who have met the requirements of IRC Section 937 but may be erroneously reporting US source income as Puerto Rico source income in order to avoid US taxation."

Much has been written about the Act 22 program, and most of it focuses on the residency issue. To qualify for Act 22 benefits, one must be a bona fide resident of Puerto Rico. Tax agencies are quite adept at assessing residency, and the IRS in particular (given its summons powers) may have access to reams of information that could be relevant to determining whether someone is actually residing in Puerto Rico.

MORE FROM FORBES ADVISOR

**Best High-Yield Savings Accounts Of 2024**

By **Kevin Payne** Contributor

**Best 5% Interest Savings Accounts of 2024**

By **Cassidy Horton** Contributor

Much less has been written about the second issue that the IRS identified as a possible concern – those people who qualify as residents of Puerto Rico but who may be "reporting U.S. source income as Puerto Rico source income." As a general matter, "rules similar to the rules for determining whether income is income from sources within the United States or is effectively connected with the conduct of a trade or business within the United States shall apply for purposes of determining whether income is from sources within" Puerto Rico. In some cases, that is straightforward. For example, income for services rendered is sourced where the service was provided, although even that can get complicated when the service is

performed partially in both places, or if the services are rendered through an entity structure.

**Tax Breaks: Get timely tax tips, need-to-know deadlines and the latest tax-related news delivered straight to your inbox.**

Email address

Sign Up

By signing up, you agree to receive this newsletter, other updates about Forbes and its affiliates' offerings, our Terms of Service (including resolving disputes on an individual basis via arbitration), and you acknowledge our Privacy Statement. Forbes is protected by reCAPTCHA, and the Google Privacy Policy and Terms of Service apply.

As a general rule, a Puerto Rico resident's capital gains are sourced to Puerto Rico, but there are rules that are designed to preclude U.S. taxpayers with appreciated assets from avoiding U.S. income tax on the growth by becoming a resident of Puerto Rico. Those rules are quite complicated and beyond the scope of this article but will obviously be an issue in IRS audits of capital gain reporting.

What has come of the IRS Act 22 campaign? In July 2023, the IRS announced that it had "recently identified about 100 high-income individuals claiming benefits in Puerto Rico without meeting the residence and source rules involving U.S. possessions. These wealthy individuals are attempting to avoid U.S. taxation on U.S. source income, and we expect many of these cases to proceed to criminal investigation."

On November 17, 2023, a group of 13 members of Congress wrote IRS Commissioner Werfel expressing their concerns with "the continuing tax avoidance by beneficiaries" of the tax break. More recently, the New York Times reported on May 28, 2024, that an IRS-affiliated whistleblower wrote to lawmakers that the IRS "has audited barely two dozen people and has collected back taxes from none." That seems to have prompted the U.S. Senate Committee on Finance to schedule a private briefing with the IRS later this month to discuss the IRS' efforts to curb abuse of the tax benefits in Puerto Rico, as reported in Tax Notes and elsewhere. According to a separate report in Bloomberg, the IRS has responded with plans to "deploy a team of additional agents and open audits of individuals" claiming the tax break.

The number of taxpayers who have relocated to Puerto Rico is small enough that any increased IRS scrutiny could materially affect their chance of an audit. Taxpayers who played by the rules should have nothing to fear, other than the burden of responding to IRS requests for information and proving their case. Taxpayers who played a little closer to the line should evaluate the strength of their reporting positions. Where that analysis results in significant concerns, they should consider self-correcting tax filings before a possible tax audit. The most aggressive taxpayers should consider consulting with a criminal tax attorney. Cases vary depending on their facts, but as a general rule taxpayers who crossed the line but who proactively seek to get tax compliant are treated far more leniently than those who do not.

*Disclosure: Although I used to be part of IRS leadership, I now represent taxpayers in IRS matters and I hope that you find the information in this article helpful. Please note, however, that the article is informational only. It does not create an attorney-client relationship, and you should not rely on it for legal advice. Follow me on LinkedIn.*



**Tom Cullinan**

Follow

I am a tax attorney at Chamberlain Hrdlicka who represents taxpayers involved in IRS-related disputes. Prior to joining Chamberlain, I was the Counselor to the IRS... **Read More**

Editorial Standards Forbes Accolades

ADVERTISEMENT

One Community. Many Voices. Create a free account to share your thoughts. Read our community guidelines here.

Log in

Be the first to comment...

2/17/25, 2:09 PM IRS Likely To Increase Scrutiny On The Puerto Rico Act 22 Tax Break

**No one seems to have shared their thoughts on this topic yet**

Leave a comment so your voice will be heard first.

Powered by OpenWeb

Terms | Privacy | Feedback

https://www.forbes.com/sites/tomcullinan/2024/06/21/irs-likely-to-increase-scrutiny-on-the-puerto-rico-act-22-tax-break/ 5/5



NSB
NEILL
SCHWERIN
BOXERMAN, P.C.
ATTORNEYS AT LAW

120 S. Central Ave., Ste. 725
St. Louis, MO 63105

314.949.1864

314.949.1864

boxerman@nsbpc.com

July 22, 2024

**By email to jean.a.lane@irs.gov**
**Jean Lane**
**Lead Revenue Agent, ATI Group 1757**
**1122 Town & Country Commons**
**Chesterfield, MO 63017**

Re: Yairanisse Rivera Lopez

Dear Revenue Agent Lane,

As you know, we represent Ms. Yairanisse Rivera Lopez in connection with a summons dated June 11, 2024 that you issued *In the matter of Liability of David Runge* (the "Summons"). On July 11, 2024, Ms. Rivera Lopez appeared in response to the Summons and answered some questions and declined to answer others. You requested that she appear for a subsequent interview to answer the questions she declined to answer on July 11 and asked that we provide you with a response to your request by July 22, 2024.

On July 22, we reported that Ms. Rivera Lopez does want to cooperate in connection with the Summons but has reservations. To overcome those concerns, we proposed that we would work with the IRS in order to obtain an immunity order pursuant to 18 USC § 6004 after which she would be able to answer your outstanding questions.

It is our understanding from your voicemail to me this afternoon that you spoke with IRS counsel and the IRS is declining to further consider this option at this time. It is our further understanding that the IRS and DOJ may pursue the summons enforcement process and that we may raise our proposal again at that point.

If you would like to discuss further, please do not hesitate to contact me. Thank you very much.

Sincerely,

Sanford Boxerman

Sanford Boxerman

EXHIBIT
2
tabbies