

DEPARTMENT OF THE TREASURY

INTERNAL REVENUE SERVICE

Washington, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

**GOVERNMENT EXHIBIT**
03/04/2025
25-mc-13
No. 3

## Memorandum of Interview

| | |
|---|---|
| Date: | July 11, 2024 |
| IRS Interviewers in person: | Jean Lane, Revenue Agent |
| | Jeremy Matthews, Revenue Agent |
| | Erika Ramirez-Castillo, Group Manager |
| | Javier Cortes, OPI Analyst |
| Other IRS Employees present on Teams call: | Bryant Smith, IRS Counsel Attorney |
| Interviewee: | Yairanisse Rivera Lopez |
| Subject: | Interview of Yairanisse Rivera Lopez for summons served on June 13, 2024 |

On July 11, 2024, starting at approximately 9:30 am EST, Revenue Agent Jean Lane (hereafter referred to as "Agent Lane") and Revenue Agent Jeremy Matthews (hereafter referred to as "Agent Matthews") of the Internal Revenue Service interviewed Yairanisse Rivera Lopez, (hereafter referred to as "Rivera") at the IRS office located at City View 2, Suite 2000, 48 Carr 165, Guaynabo, PR  00968.

Prior to the interview, Agent Lane and Agent Matthews had discussions with Rivera's representatives, Attorneys Sanford Boxerman (hereafter referred to as "Boxerman") and Michelle Schwerin (hereafter referred to as "Schwerin") of Neill Schwerin Boxerman, P.C.   Rivera's attorneys had advised Rivera not to answer any questions for the reason she had not had sufficient time to confer with counsel prior to the scheduled appearance and that she was a party to a nondisclosure agreement.  IRS 7609(i)(3) was previously provided to and discussed with Boxerman and Schwerin.

Rivera confirmed her identity. Rivera said the following:

Rivera has a Bachelor's degree in System Administration.  Prior to working at TLS, Rivera worked at the court house in Puerto Rico in the administration office.  She worked as an Administration Secretary, working on motions and certificates.

Rivera first heard about TLS from an advertised job opening for a Client Support Specialist.  She saw the posting on Indeed or some other job posting.  Rivera was offered the position and she started working at

TLS in 2018. Eileen Diaz was Rivera's supervisor while she worked at TLS. Rivera always worked in Puerto Rico for TLS. She never worked on the mainland U.S.

Rivera was always an employee and not a contractor of TLS. Rivera signed an employment contract with TLS. Rivera was not able to describe the provisions of the employment contract as she does not remember the details of the contract. Rivera did not provide any services to TLS outside the employment contract.

Rivera did not work for anyone else or her own business while she was employed by TLS.

Rivera is no longer employed by TLS. She left TLS in January 2023. Rivera has not provided any services to TLS since she left TLS in January 2023.

Rivera never worked directly with TLS clients.

Rivera does not know who currently manages TLS.

Rivera does not know if Runge or Richard Colombik still work at TLS.

Rivera does not know if Richard Colombik resided in Puerto Rico over half the year in years 2018, 2019, 2020, 2021, 2022 or 2023.


Rivera refused to answer the following questions, claiming the 5th Amendment and her non-disclosure agreement in response to each question.

1) What were your job duties at TLS?

2) How were you compensated by TLS? (ie. Hourly, salary, bonus, etc)

3) Why were your payments structured this way?

4) Why did you stop employment at TLS?

5) Did you perform services directly for David Runge?

   Describe in detail what services were provided

   How were you compensated?

6) Did you perform services directly for Richard Colombik?

   Describe in detail what services were provided

   How were you compensated?

7) Did you perform services directly for Management Services International ("MSI")?

   Describe in detail what services were provided

   How were you compensated?

8) Did you perform services directly for Jeremy Colombik?

    Describe in detail what services were provided

    How were you compensated?

9) How many hours a week did you perform services for TLS?

10) Describe your duties while working at TLS.

11) Do/did you ever have ownership in TLS and/or a TLS Division?

12) Can you describe the details for the following tax savings strategies that were offered to TLS Clients?

    a. Fringe benefits

    b. TLS Division (Puerto Rico) providing services to U.S. clients

    c. Micro-captives

    d. Deferred compensation

    e. Other strategies offered

13) Describe your involvement for each strategy.

14) Who was involved in developing the tax position for each of the strategies?

15) What are the options for a TLS client to receive distributions from their respective TLS Division?

16) What were clients told about the taxability of distributions they received from their TLS Division?

    Did you agree with this tax position?

17) What were clients told about taking loans from their TLS Division?

18) What were the clients told about the taxability of any loans they received from their TLS Division?

19) Who created the presentations made to potential clients for all of the various strategies offered by TLS?

20) Who made the presentations to potential clients of TLS to discuss the various strategies offered by TLS?

21) Who created the original Capital Preservation Report ("CPR")?

22) Did you have any involvement with the creation or updates to the CPR?

    If yes, describe

23) Did you ever make CPR presentations to clients?

24) Walk through the steps for a CPR presentation made to a client.

25) What types of services did TLS or a TLS Division provide to the client?

26) How was the pricing of these services determined?

27) Who was involved with the pricing of these services?

28) Did you ever have a discussion with anyone at TLS about TLS clients moving their owner and/or their U.S. employees under their TLS Division?

    If yes, provide details of these discussions.

29) What was the main goal behind moving the client owner and/or employees under their TLS Division?


**Puerto Rico Trust Strategy**

30) The Puerto Rico Trust Strategy means the strategy utilized by TLS to have a Puerto Rico Trust (S2C2 Irrevocable Grantor Trust) become the owner of each TLS Division. Are you familiar with this strategy?

31) Who did you first discuss the Puerto Rico Trust Strategy with?

    When was this?

32) Who first came up with the Puerto Rico Trust Strategy?

33) Why was the Puerto Rico Trust Strategy pursued?

34) Whose idea was it to pursue the Puerto Rico Trust Strategy?

35) Who did the research to come up with the tax position for the Puerto Rico Trust Strategy?

36) What was your role in the development and utilization of the Puerto Rico Trust Strategy?

37) What was D. Scott Robinson's role in the development and utilization of the Puerto Rico Trust Strategy?

38) What was David Runge's role in the development and utilization of the Puerto Rico Trust Strategy?

39) What was Richard Colombik's role in the development and utilization of the Puerto Rico Trust Strategy?

40) What was Christopher Hynes' role in the development and utilization of the Puerto Rico Trust Strategy?

41) What was Marilyn Cruz's role in the development and utilization of the Puerto Rico Trust Strategy?

42) How did Marilyn Cruz become involved with the Puerto Rico Trust Strategy?

43) Describe in detail how the Puerto Rico Trust Strategy works:

    a.  S2C2 Irrevocable Grantor Trust
        Who is the Grantor?
        Who is the Beneficiary?

    b. WYR 2019-2 Grantor Trust (U.S. Trust)
       Who is the Grantor?
       Who are the Beneficiaries?

    c. Sub-trusts
       Who is the Grantor?
       Who is the Beneficiary?

    d. Series LLCs
       i. Why were these used in the strategy?
       ii. Why did Marily Cruz have unused Series LLCs available?

44) What was the structure using a Puerto Rico Trust prior to the creation of S2C2?

45) Did each client create their own Puerto Rico Trust?

46) Who was the grantor of each of these Puerto Rico Trusts?

47) Who was the beneficiary of each of these Puerto Rico Trusts?

48) Who were the trustees of each of these Puerto Rico Trusts?

49) Who chose the Trustee of each of these Puerto Rico Trusts?

50) Why did the structure change from each client creating their own Puerto Rico Trust to using S2C2 Puerto Rico trust for all clients?

51) Who made the decision to make this change?

52) Were Series LLCs and Sub-Trusts used in this Puerto Rico Trust structure?

53) Provide details for this Puerto Rico Trust Structure prior to creation of S2C2.

54) Have you prepared and/or filed any Forms 3520 or 3520A for any foreign trusts that were created for or by TLS or TLS clients?

    If yes, who provides you with the information for the Forms 3520 or 3520A?

55) Who is Meridian Trust Company?

56) Did you ever work with or for Meridian Trust Company?

57) Does David Runge or Richard Colombik have any ownership interest in Meridian Trust Company?

58) What relationship does TLS, Runge, and Colombik have with Meridian Trust?

59) Are you aware of any ownership changes in TLS in the last 3 years?

    If yes, describe


**David Runge and Richard Colombik:**

60) What roles/position did David Runge have at TLS when you worked at TLS?

61) What roles/position did Richard Colombik have at TLS when you worked at TLS?

62) Based on your observations, did David Runge reside in Puerto Rico over half the year in 2018, 2019, 2020 or 2021?

Rivera was asked if anyone is assisting her with the payment of her legal fees for her representation of this summons response. Boxerman and Schwerin replied that they do not want Rivera to answer this question due to 5th amendment that was previously discussed, but also there are broader grounds for not responding.

It was agreed that Boxerman and/or Schwerin will contact Agent Lane by July 22, 2024 to let her know if Rivera will provide any additional answers to the questions asked during the interview of Rivera on July 11, 2024 or if summons enforcement should be pursued.

This memorandum of interview was prepared by Revenue Agent Jean Lane and finalized on August 13, 2024 after reviewing the notes made during and immediately after the interview with Rivera by Agent Lane and Agent Matthews. Agent Lane reviewed and signed this memorandum on August 13, 2024.

Jean A. Lane
Digitally signed by Jean A. Lane
Date: 2024.08.13 13:27:13 -05'00'
_____

Jean Lane, Revenue Agent